UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLADAYO OLADOKUN,

Petitioner,

-v-

WARDEN D. RICKARD,

Respondent.

25-CV-7674 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Petitioner Oladayo Oladokun, a federal prisoner currently incarcerated at Federal Correctional Institute ("FCI") Otisville who is proceeding here without counsel, was sanctioned after a search of his locker yielded a hidden compartment containing a cellphone. In this case, brought by way of a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241, he challenges the sanctions on the ground that the proceedings violated his due process rights, that there was insufficient evidence to sustain the charge against him, that officers failed to comply with Bureau of Prisons ("BOP") regulations, and that the sanctions were excessive. *See* ECF No. 1 ("Pet."). For the reasons that follow, the Court concludes that Oladokun's petition, even liberally construed, *see, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017), fails to present any basis for relief. Accordingly, his petition must be and is DISMISSED.

**BACKGROUND**

On February 1, 2023, Oladokun was sentenced to 125 months' imprisonment for conspiracy to commit both bank fraud and money laundering. ECF No. 11-1, at 3. From July 2024 until April 2025, Oladokun was incarcerated at FCI Butner Low. ECF No. 11, ¶ 5. There, on January 24, 2025, a BOP Officer Hayden searched Oladokun's locker and found a blue

Motorola cell phone within a hidden compartment. ECF No. 11-4 ("DHO Record"), at 7; *see id.* at 11.[1] The same day, BOP officers provided Oladokun with an Incident Report, charging him with violating Prohibited Act Code 108, which prohibits inmates from possessing hazardous tools such as cellphones. *See id.* at 7; *see also* 28 C.F.R. § 541.3, Table 1, ¶ 108. Three days later, Oladokun appeared before the Unit Disciplinary Committee, which referred the charges to a Disciplinary Hearing Officer ("DHO") given their "severity" and "the greater sanctions available at the DHO level." DHO Record 8; *see* ECF No. 10 ("Resp.'s Mem."), at 2.

On March 12, 2025, the DHO held a hearing, at which Senior Officer Specialist Stovall appeared as Oladokun's staff representative. DHO Record 2. Oladokun provided the DHO with a "three-page typed statement" contesting the charges and BOP officers' compliance with various procedures; he also called two witnesses. *Id.* The DHO did not permit Oladokun to call a third witness on the ground that the witness's testimony would have been "repetitive" and the witness had been "transferr[ed] to another institution." *Id.* at 3. During the hearing, Oladokun denied the charges, arguing, in sum and substance, that he did not know a cellphone was in his locker and that anyone could have placed it there because he did not own a combination lock. *Id.* at 4. Based on the "greater weight of evidence" — including the Incident Report, a Chain of Custody report, a photograph of the cellphone, Oladokun's written statement, and a Commissary Receipt indicating that Oladokun had purchased a combination lock, *id.* at 3 — the DHO determined that Oladokun had "committed the prohibited act as charged." *Id.* at 5. As a result, Oladokun was sanctioned with the loss of forty-one days of good conduct time and six months of telephone privileges, as well as four months of visitation restrictions. *Id.* at 6.

---

[1] ECF No. 11-4 is a compilation of documents. Citations to it are to are to the page number or numbers automatically generated by the Court's Electronic Case Filing system.

After exhausting his administrative remedies as required, *see* Pet. 2; Resp.'s Mem. 4-5; *see also, e.g.*, *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Oladokun filed this petition challenging the sanctions that were imposed.

**DISCUSSION**

A federal "prisoner may challenge the execution of his sentence, such as disciplinary actions, loss of good time credits, and alleged due process violations, in a petition under 28 U.S.C. § 2241." *Davis v. Warden*, No. 21-CV-8876 (LTS), 2021 WL 6101457, at *1 (S.D.N.Y. Nov. 19, 2021); *see Carmona*, 243 F.3d at 632. Indeed, "[d]ue process rights extend to prisoners in federal custody when there is a recommendation for the loss of good time credits because this loss qualifies as a protected liberty interest." *Leinheiser v. Pilier*, No. 21-CV-1191 (GBD) (VF), 2025 WL 845944, at *3 (S.D.N.Y. Mar. 18, 2025) (internal quotation marks omitted). Significantly, however, a prisoner subject to disciplinary proceedings is not due the same "full panoply of rights" to which a defendant in a criminal prosecution is entitled. *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (per curiam) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). "The only process due . . . is th[e] minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (citations omitted). That requires "[1] advance written notice of the charges; [2] a fair and impartial hearing officer; [3] a reasonable opportunity to call witnesses and present documentary evidence; and [4] a written statement of the disposition, including supporting facts and reasons for the action taken." *Smith*, 803 F.3d at 127 (citations omitted); *accord Williams v. Bonano*, No. 24-CV-1586 (KMK), 2025 WL 2711406, at *4 (S.D.N.Y. Sept. 23, 2025). The Court considers each requirement in turn.

First, Oladokun was given advanced written notice of the charges. "Due process requires that prison officials give an accused inmate written notice of the charges . . . twenty-four hours prior to conducting a disciplinary hearing." *Elder v. McCarthy*, 967 F.3d 113, 128 (2d Cir.

2020). The notice must simply "permit a reasonable person to understand what conduct is at issue." *Id.*; *see Leinheiser*, 2025 WL 845944, at *3 (holding that an incident report "satisfied the notice requirement" when it "explained that an officer discovered a cell phone battery on Petitioner and outlined the resulting charges against him"). Here, BOP officers provided Oladokun with the Incident Report three days prior to an initial disciplinary hearing before the Unit Disciplinary Committee and forty-seven days prior to the DHO hearing. Resp.'s Mem. 2-3; *see* DHO Record 7. The Incident Report explained that a correctional officer had searched Oladokun's locker and found a cellphone inside a hidden compartment. DHO Record 7. The Incident Report also clearly listed the corresponding charge of Possession of a Hazardous Tool. *Id.* This timely provision of the Incident Report to Oladokun gave him adequate notice of the charges against him and did not violate his due process rights.

Second, Oladokun was not denied his due process right to a fair and impartial hearing officer. An inmate facing a disciplinary hearing is entitled to a hearing officer who does not "prejudge the evidence" or an inmate's guilt. *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990) (citing *Wolff*, 418 U.S. at 570-71); *cf.* 28 C.F.R. § 541.8(b) ("The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."). But "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). And a claim of hearing officer bias requires more than an inmate's own subjective beliefs and conclusory allegations. *See Brooks v. Prack*, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014) (citing *Francis*, 891 F.2d at 47). Measured against these standards, Oladokun's claim of hearing officer bias falls short. The DHO was not involved in the underlying incident or investigation, and he both allowed Oladokun to state his version of the facts and considered the available documentary evidence and witness testimony. DHO Record

2-3. Oladokun challenges the DHO on the ground that he was the Unit Manager, *e.g.*, Pet. 3, who was responsible for "overs[eeing] the very housing practices at issue [of] locker attribution, staff compliance, and contraband placement." ECF No. 17 ("Petr.'s Reply"), at 1. But without more, that conclusory allegation is insufficient to establish that the DHO prejudged the evidence or Oladokun's guilt. *See, e.g.*, *Espinal v. Goord*, 180 F. Supp. 2d 532, 538-39 (S.D.N.Y. 2002) (holding that the "supervisor of the security staff who responded to the incident" was sufficiently "fair and impartial" to serve as a DHO because he was not directly involved in the underlying incident or investigation).[2] Thus, Oladokun fails to establish that the DHO was biased.

Third, Oladokun was provided a reasonable opportunity to call witnesses and present documentary evidence. For one thing, he was able to and did present the DHO with documentary evidence in the form of a "three-page[] statement" contesting the charges. DHO Record 12-14; *see id.* at 4 (noting that the DHO "considered and reviewed [Oladokun's] submitted documentation which . . . questioned the evidence presented in [his] case"). And he was permitted to call two witnesses to testify on his behalf. *See id.* at 2. Oladokun contends that his due process rights were violated because the DHO did not permit him to call a third inmate as a witness. *See* Pet. 4.[3] But "a hearing officer does not violate due process by excluding

---

[2] Oladokun quotes *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996), for the proposition "that 'even the appearance of partiality' undermines disciplinary due process." ECF No. 17 ("Petr.'s Reply"), at 1. But the DHO's position as Unit Manager does not create an appearance of partiality sufficient to raise a due process concern. As the Second Circuit has observed, "[b]ecause of the special characteristics of the prison environment, it is permissible for the impartiality of [prison hearing officials] to be encumbered by various conflicts of interests that, in other contexts, would be adjudged of sufficient magnitude to violate due process." *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989); *accord Allen*, 100 F.3d at 259 ("It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts.").

[3] The third inmate was Daniel Boice. *See* ECF No. 1 ("Pet."), at 5; ECF No. 10 ("Resp.'s Mem."), at 4. Relatedly, Oladokun asks the Court to "[t]ake judicial notice of the Daniel Boice case regarding misconduct by Officer Ford," Pet. 5, "an officer in Oladokun's housing unit [who] planted a contraband cellphone in another inmate's locker," Resp.'s Mem. 11; *see also*

irrelevant or unnecessary testimony." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999); *see, e.g.*, *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (holding that a hearing officer may exclude "redundant" evidence); *Higgins v. Coombe*, No. 95-CV-8696 (RCC), 2002 WL 362776, at *2 (S.D.N.Y. Mar. 6, 2002) (holding that a hearing officer may preclude a witness "whose proffered testimony would be irrelevant to the determination of [the prisoner's] guilt"). Here, the DHO reasonably determined, based on Oladokun's own proffer, that the third witness was unnecessary because his testimony would have been "repetitive" of the testimony given by the other two witnesses. DHO Record 3. In light of that finding, the DHO's determination not to permit Oladokun to call the third witness does not amount to a due process violation.

Finally, the DHO provided a written statement of the disposition with sufficient supporting facts and reasons for the actions taken. *See* DHO Record 4-5. Significantly, judicial review of the DHO's written statement "is limited to determining whether the disposition is supported by 'some evidence.'" *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)); *see Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012) (summary order). The "some evidence" standard is "extremely tolerant and is satisfied if there is *any* evidence in the record that supports the disciplinary ruling." *Leyva v. Warden*, 699 F. App'x 4, 5 (2d Cir. 2017) (summary order) (citation omitted); *see Shizari v. Cereney*, No. 06-CV-6304 (JGK), 2007 WL 1630331, at *3 (S.D.N.Y. May 31, 2007) (observing that even "meager" evidence constitutes "some evidence").

---

Petr.'s Reply 2. The Court declines to do so, as the case is not a fact that is either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, taking judicial notice of the Daniel Boice case would not affect the outcome of this case. *See Gobern v. United States*, No. 18-CV-12411 (VSB), 2021 WL 3774293, at *4 n.4 (S.D.N.Y. Aug. 25, 2021) (declining to take judicial notice of the outcome of "an unrelated case" on the ground that it did not change the court's "determination").

Sufficient evidence can include eyewitness testimony from correctional officers alone, *Livingston v. Kelly*, 423 F. App'x 37, 40 (2d Cir. 2011) (summary order), or a decision "based, in part, on [a] chain of custody form," *Leinheiser*, 2025 WL 845944, at *4 (summarizing *Estrella v. Terrell*, No. 12-CV-0543 (DLI) (LB), 2014 WL 3724813, at *2 (E.D.N.Y. July 25, 2014)).

Measured against these deferential standards, there is no basis to second guess the DHO's written statement. The DHO relied on four pieces of evidence — the incident report, a chain-of-custody receipt, a commissary receipt, and a photograph of the seized cellphone — in determining, based on the "greater weight of evidence," that Oladokun had possessed a cellphone. DHO Record 3-5. In particular, the DHO credited the incident report completed by the BOP officer who searched Oladokun's locker and found in it not only the cellphone in a hidden compartment, but also Oladokun's "mail, pictures, and legal documents." DHO Record 4; Pet. 22. And in light of, among other things, the commissary receipt showing that Oladokun had "purchased a lock," the DHO declined to credit Oladokun's self-serving claims that he was unaware of the hidden compartment and that anyone could have placed the cellphone in it given that he did not own a lock. *See* Pet. 2; DHO Record 2, 4, 5; *see Shizari*, 2007 WL 1630331, at *3 ("The DHO [is] free to consider the credibility of the petitioner's explanation and reject his denial of responsibility."). In short, there was plainly "some evidence" to support the DHO's determinations. And there is no indication that this evidence was "fantastical or directly rebutted by exculpatory evidence." *Nichols v. Von Blanckensee*, No. 18-CV-754 (VB), 2018 WL 4387558, at *2 (S.D.N.Y. Sept. 14, 2018) (quoting *Smith v. Menifee*, No. 02-CV-7630 (LBS), 2003 WL 1872668, at *2 (S.D.N.Y. Apr. 10, 2003)).[4] It follows that the Court may not disturb the DHO's findings and ultimate disposition.

---

[4] Oladokun asserts in conclusory fashion that the chain-of-custody receipt is "post-hoc, not contemporaneous." Petr.'s Reply 1. But there is no evidence to support that assertion. He also notes that BOP officers failed to take photographs of the cellphone in the location where it was

In sum, Oladokun's due process challenge fails. His remaining arguments fare no better. First, he contends that the officers involved in the search of his locker failed to follow BOP procedures. *See* Pet. 3, 4; Petr.'s Reply 2; Resp.'s Mem. 14-15. But "technical non-conformity with prison procedure is not a constitutional violation, so long as the disciplinary process conforms to the constitutional minimum requirements outlined . . . in *Wolff*." *Mendez v. Bell*, No. 16-CV-2123 (JAM), 2018 WL 4039321, at *4 (D. Conn. Aug. 23, 2018); *see Shakur v. Selsky*, 391 F.3d 106, 118-19 (2d Cir. 2004). Second, Oladokun challenges the severity of his disciplinary sanctions, Pet. 16, which included the loss of forty-one days of good conduct time and six months of telephone privileges as well as a four-month visitation restriction, Pet. 1; DHO Record 6. Whether the challenge is construed to be under the Eighth Amendment or the Due Process Clause, however, it is easily rejected. Courts may not "second guess" a DHO's "determination with respect to appropriate punishment" if sanctions fall "within the range of penalties available for th[e] offense." *Wentzel v. Piller*, No. 21-CV-9245 (AT) (JLC), 2022 WL 9798257, at *11 (S.D.N.Y. Oct. 17, 2022), *report and recommendation adopted*, 2023 WL 5183144 (S.D.N.Y. Aug. 11, 2023); *see Nichols*, 2018 WL 4387558, at *4 ("The Court is not inclined to find these administratively mandated penalties unconstitutional."); *Cruz-Robles v. Stover*, No. 23-CV-755 (OAW), 2024 WL 126881, at *3 (D. Conn. Jan. 11, 2024) ("[C]ourts agree, although more frequently in the due process context, that sanctions within the range expressly authorized by Bureau of Prisons regulations are not unconstitutional." (listing cases)).

---

found, Petr.'s Reply 2, and asks the Court to "[o]rder production of locker assignment and inspection records" and "[g]rant an evidentiary hearing on the credibility of staff practices at FCI Butner Low," Pet. 5. These requests overlook the Court's limited role in reviewing the DHO's determinations. *See, e.g.*, *Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012) (summary order); *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004). In any event, even if the Court disregarded the chain-of-custody receipt and declined to put any weight on the photograph of the cellphone, there would be "some" — and thus sufficient — evidence to support the DHO's determinations. *See Leyva v. Warden*, 699 F. App'x 4, 5 (2d Cir. 2017) (summary order).

The sanctions imposed here were plainly within the range of available penalties, *see* 28 C.F.R. § 541.3, Table 1, ¶ 108, and entirely reasonable given that cellphones in prison "threaten[] the safety and security . . . of the inmate involved [and] of the entire institution," DHO Record 6. Moreover, Oladokun's conclusory allegations aside, *e.g.*, Pet. 15, 16, there is no evidence in the record suggesting that the sanctions were imposed to retaliate against or harass him. Thus, there is no basis to second guess the sanctions imposed on Oladokun.

**CONCLUSION**

For the foregoing reasons, the Petition must be and is DISMISSED. To the extent a certificate of appealability would be required for Oladokun to appeal, Oladokun has not made a substantial showing of the denial of a constitutional right and, thus, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *see also Lozada v. United States*, 107 F.3d 1011, 1014-16 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment consistent with this Opinion and Order, to mail a copy of the Opinion and Order to Oladokun, and to close the case.

SO ORDERED.

Dated: September 2, 2026
New York, New York

JESSE M. FURMAN
United States District Judge